UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61830-Civ-SCOLA

FEDERAL TRADE COMMISSION,

    Plaintiff,
vs.

IAB MARKETING ASSOCIATES, LP, *et al.*,

    Defendants.

_____/

## ORDER DENYING RELIEF FROM ASSET FREEZE
## TO PAY ATTORNEY FEES

The IAB Defendants[1] were involved in a scheme to market and sell healthcare plans to consumers by getting consumers to become members of an association that purported to offer members major or traditional health insurance, or the equivalent of such insurance. The FTC alleges that this scheme was deceptive in several ways. As detailed more fully below, the Court has found that the FTC is likely to prevail in proving that the scheme was deceptive and illegal, and that the public interest is best served by freezing the IAB Defendants' assets so that the Court can eventually redress consumers' injuries. It is against this backdrop that the IAB Defendants' current motions for *further* limited relief from the asset freeze to pay attorney fees (DE 110 and DE 243) must be understood.

On September 18, 2012, the Court entered a Temporary Restraining Order which froze all the IAB Defendants' assets. (DE 17.) A temporary monitor was appointed, and a preliminary-injunction hearing was held on October 4, 2012. (DE 17; DE 61; DE 114.) Following this hearing, the Court entered a Preliminary Injunction that, among other things, continued the asset freeze and appointed a permanent receiver. (DE 72.) In the Preliminary Injunction, the Court specifically found that "there is good cause to believe that the [IAB

---

[1] The IAB Defendants consist of the following Defendants: Independent Association of Businesses; IAB Marking Associates, LP; International Marketing Agencies, LP; Healthcorp International, Inc.; JW Marketing Designs, LLC; International Marketing Management, LLC; Wood, LLC; James C. Wood; James J. Wood; and Michael J. Wood. Collectively, for purposes of this Order, these Defendants are referred to as the IAB Defendants. Defendants James C. Wood, James J. Wood, and Michael J. Wood are referred to as the Individual IAB Defendants. The remaining IAB Defendants are referred to as the Corporate IAB Defendants.

Defendants] have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)"; that "the FTC has established the likelihood of success in showing that the [IAB Defendants] have made serious misrepresentations leading consumers to believe, among other things, that an Association Membership is health insurance or the equivalent of such insurance"; that "the FTC has established a likelihood of success on the merits that the [IAB Defendants] violated the [Telemarketing Sales Rule (TSR), 16 C.F.R. § 310,] in numerous respects," including that the IAB Defendants "made or caused false and misleading statements to induce persons to pay for services"; that the "FTC has demonstrated a likelihood that the Individual IAB . . . Defendants are individually liable and properly subject to an asset freeze"; that the "FTC is likely to prevail in showing that . . . Defendants James C. Wood, James J. Wood, [and] Michael J. Wood . . . have, or have had, the ability to control the Corporate IAB . . . Defendants because each is an officer, manager, or majority shareholder of one or more of the Corporate IAB . . . Defendants"; that the "FTC has demonstrated it will likely prevail in showing that . . . Defendants James C. Wood, James J. Wood, [and] Michael J. Wood . . . either had knowledge of the misrepresentations, were recklessly indifferent to the fact that misrepresentations were being made, or were aware that there was a high probability that misrepresentations were made but intentionally avoided the truth"; that "there is good cause to believe that immediate and irreparable harm will result from the [IAB Defendants'] ongoing violations of the FTC Act and the TSR unless [those] Defendants are restrained and enjoined by Order of this Court"; and that "[a]fter weighing the equities and considering the FTC's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze and the appointment of a Receiver is in the public interest."  (DE 72 at 3-5.)

## ANALYSIS

A district court has the inherent, equitable power to freeze assets "as an incident to its express statutory to issue a permanent injunction under Section 13 of the Federal Trade Commission Act." *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984). The natural corollary to this rule is that a court may unfreeze those assets when equity requires. *See Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (holding that the district court did not abuse its discretion by precluding defendants from using frozen assets to pay their attorney fees in a civil-law-enforcement case because the "frozen assets fell far short of the amount needed to compensate [defendants'] customers").  The word *may* in the previous sentence is significant: a court has discretion to refuse to unfreeze assets so that a defendant can use those assets to pay for living expenses or

attorney fees. *Id.*; *FTC v. RCA Credit Services, LLC*, 2008 WL 5428039, at *4 (M.D. Fla. December 31, 2008). When frozen assets are less than the amount needed to compensate consumers for their losses, a district court can properly refuse to unfreeze assets. *RCA Credit Services*, 2008 WL 5428039, at *4. That is because one purpose of the asset freeze is to ensure that funds are available to provide consumers redress and deprive wrongdoers of their ill-gotten gains. *Id.* "Moreover, while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *Id.*

The Court has already released $75,000 from the asset freeze to pay attorney fees. (DE 73.) The IAB Defendants now seek the release of additional funds to pay attorney fees. But funds should not be released from the asset freeze to pay for the IAB Defendants' attorney fees because the IAB Defendants' monetary liability greatly exceeds the frozen funds. In an equitable, FTC-enforcement action like this one, defendants are liable to the extent of their ill-gotten gains. *FTC v. Bishop*, 425 F. App'x 796, 798 (11th Cir. 2011) (citing *Commodity Futures Trading Commission v. Wilshire Investment Management Corp.*, 531 F.3d 1339, 1345 (11th Cir. 2008)). The proper measure of ill-gotten gains is revenue, not profit. *FTC v. Washington Data Resources*, No. 8:09-cv-2309-T–23TBM, 2011 WL 3566612, at *3 (M.D. Fla. July 15, 2011). From January 1, 2007 through approximately September 2012, the IAB Defendants' own records show that their revenue (sales less chargebacks and refunds) is not less than $125 million. (DE 121 at 19.) The value of the frozen assets is a mere pittance compared to this enormous sum. As of November 1, 2012, the largest value that could be ascribed to the frozen assets is approximately $2.812 million.[2] (*See id.* at 4-5, 20.) Of this amount, $438,476 was available for the Receiver to use. (*Id.* at 20, 26.) And the costs of the receivership over time have decreased the value of the frozen assets: as of May 13, 2013, the cash on hand for the receivership was $242,762.04. (DE 258 at 2.) It is extremely unlikely that the frozen assets will be adequate to redress consumer injuries. If the Court allows the IAB Defendants to pay their attorney fees using these assets, the already inadequate assets will be further diminished. And the Court already found when it entered the Preliminary Injunction that the equities favored an asset freeze to protect the public interest. (DE 72 at 5.) Given these circumstances, the Court concludes that

---

[2] This includes the unencumbered liquid assets of $829,000, the $1.7 million in nonliquid assets, and the assets James Woods claims are Tressa Woods's separate property (a bank CD and her 401(k) account). (*See id.* at 4-5, 20.) And it excludes the approximately $200,000 Fairmont Specialties is owed. If this amount and the allegedly separate property in Tressa's name are subtracted out, the frozen assets amount to approximately $2.329 million. (*Id.* at 4-5.)

equity favors preserving the meager frozen assets to protect consumers rather than allowing the IAB Defendants to pay for additional attorney fees using funds which were likely ill-gotten.

Even though the IAB Defendants' monetary liability greatly exceeds the frozen funds, the Court believed that fairness dictated granting the IAB Defendants a reasonable amount to pay attorney fees through the preliminary-injunction hearing. *See SEC v. Dowdell*, 175 F. Supp.2d 850, 856 (W.D. Va. 2001) (modifying an asset freeze to allow defendants to pay for reasonable attorney fees necessary to take the defendants through the preliminary-injunction hearing). The Court believed it was fair to provide this money because in deciding whether to enter a preliminary injunction, the Court must evaluate the likelihood that the FTC will prevail on the action's merits and balance the equities. *FTC v. University Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir. 1991). In other words, the preliminary-injunction hearing and the legal work leading up to it is a chance for a defendant to show that the FTC is not likely to prevail on the merits. So although the merits of an action are not finally resolved when a preliminary injunction is entered, a highly relevant finding concerning the merits is made at that point. That is why on October 9, 2012, the day the Court entered the preliminary injunction, the Court did unfreeze $75,000 to pay the IAB Defendants attorney fees and legal expenses. (DE 73.) Because the Court provided the IAB Defendants with a reasonable amount of frozen funds to pay attorney fees leading up to the entry of the preliminary injunction, no further funds need to be released for attorney fees.

The IAB Defendants' arguments do not undercut this conclusion. Their main argument is that the Court has discretion to unfreeze the funds to pay for attorney fees, which they support by citing to cases where funds were unfrozen to allow such fees to be paid. (DE 110 at 4-6.) But the Court knows it has this discretion, and it believes that given the already $75,000 which was unfrozen, the vast discrepancy between the amount of the frozen assets and the IAB Defendants' likely ill-gotten gains, and the likelihood that the FTC will prevail on the merits, its discretion is best exercised by refusing to unfreeze more funds. More specifically, the case the IAB Defendants rely on most heavily—namely, *FTC v. U.S. Mortgage Funding, Inc.*, 2011 WL 2293377 (S.D. Fla. June 9, 2011) (Cohn, J.)—is distinguishable. Though the court in that case unfroze assets so that the defendants could pay attorney fees, the receiver did not oppose the request to pay attorney fees with frozen funds, and the receiver represented to the court that the request for attorney fees was reasonable. *Id.* at *1 n.4. But the Receiver in the present case strenuously objects to the IAB Defendants' motions, and the Court finds those objections persuasive. (*See* DE 121; DE 258.) The IAB Defendants next protest that the $75,000 they request to appeal the preliminary injunction is no different than representation at a preliminary-

injunction hearing because the representation in both cases is a "defense of the case on the merits." (DE 134 at 2.) But there is a difference: once a court enters a preliminary injunction, it has determined that the FTC is likely to prevail on the merits. A defendant's appeal of a preliminary injunction is directed to a different court and does not change the district court's finding of who is likely to prevail. The IAB Defendants also argue that due process requires funds be unfrozen to pay attorney fees. (*See* DE 243 at 3 ("In seeking payment of these fees, Defendants ask for not the shell of due process, but the substance thereof, and request that their counsel be compensated.").) They cite no authority for this proposition, and the Court is not aware of any. *See Sec v. Lauer*, 445 F. Supp. 2d 1362, 1368-69 (S.D. Fla. 2006) (Marra, J.) (reasoning that due process does not require unfreezing funds to pay for counsel). The very fact that a district court has discretion to decide whether to unfreeze assets to pay attorney fees belies the notion that defendants in such cases have a due process right to use frozen funds to pay for counsel. Maintaining the asset freeze is also not unfair to the IAB Defendants' attorneys because these attorneys knew that the Court's Temporary Restraining Order (TRO) (DE 17) froze the IAB Defendants' assets before the attorneys agreed to represent them,[3] and therefore these attorneys assumed the risk of not getting paid. *See FTC v. Johnson*, Case No. 2:10-cv-02203, DE 244 at 5-6 (D. Nev. June 17, 2011).

In sum, the Court concludes that the public interest is best served by maintaining the asset freeze and denying the IAB Defendants' requests to release frozen funds to pay attorney fees.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the IAB Defendants' motions (DE 110; DE 243) to the extent that they seek the release of funds to pay attorney fees and legal expenses.

**DONE and ORDERED** in chambers, at Miami, Florida, on June 4, 2013.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

---

[3] The first filing by the attorneys for the IAB Defendants shows that the attorneys knew about the asset freeze before agreeing to the representation. (DE 21.)