UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61830-Civ-SCOLA

Federal Trade Commission,

    Plaintiff,
vs.

IAB Marketing Associates, LP, *et al.*,

    Defendants,

Avis S. Wood and Tressa K. Wood,

    Relief Defendants.
_____/

## ORDER AUTHORIZING THE RECEIVER TO SURRENDER A LIFE INSURANCE POLICY IN A TRUST AND TO PAY CONSUMER "CHARGEBACKS"

The Texas Receiver, Charlene Koonce, asks the Court to authorize her to surrender the life-insurance policy owned by the James C. Wood Irrevocable Life Insurance Trust No. 2 (the Trust) and to pay North Dallas Bank and Trust (NDBT) for all consumer chargebacks that NDBT has paid, up to a maximum of $6,500. (DE 167.) The IAB Defendants[1] oppose the Motion. For the reasons set forth below, the Court **GRANTS** the Motion (DE 167).

### A.   Surrendering the life-insurance policy

In June 2005, James C. Wood (James) created the Trust with James J. Wood (Joshua) and Michael J. Wood (Jacob) as the sole beneficiaries. (DE 133-2 at 18; DE 167-1 at 2.) The Trust owns a life-insurance policy that insures the life of James. (DE 167-1 at 2-3.) James paid the premiums on the life-insurance policy, and the IAB Corporate Defendants reimbursed him for

---

[1] The IAB Defendants consist of the following Defendants: Independent Association of Businesses; IAB Marking Associates, LP; International Marketing Agencies, LP; Healthcorp International, Inc.; JW Marketing Designs, LLC; International Marketing Management, LLC; Wood, LLC; James C. Wood; James J. Wood; and Michael J. Wood. Collectively, for purposes of this Order, these Defendants are referred to as the IAB Defendants or the Defendants. Defendants James C. Wood (James), James J. Wood (Joshua), and Michael J. Wood (Jacob) are referred to as the Individual IAB Defendants. The remaining IAB Defendants are referred to as the Corporate IAB Defendants.

these payments. (*Id.* at 3; DE 167 at 2.) Because the definition of *Assets* in the Preliminary Injunction encompasses the proceeds of the Trust, the policy is a receivership asset. The surrender value of the policy as of November 28, 2012 was approximately $62,149, but if quarterly premium payments are not made, the surrender value is used to pay the premiums. (DE 167 at 2; DE 167-1 at 3.) The Receiver wants to liquidate the policy and deposit the surrender value into the receivership bank account in order to preserve receivership assets. (DE 167 at 2-3; DE 177 at 3-4.)

The Court agrees that liquidating the policy will best preserve receivership assets. James is not likely to die during the receivership. This in turn means that the life-insurance policy's proceeds are unlikely to inure to the receivership's benefit. The principal value of the policy to the receivership is the surrender value, and that value is not enhanced or protected by paying the premiums. So paying the premiums from receivership assets would needlessly diminish the receivership estate.

The Defendants argue that their pending appeal should prevent the Court from authorizing the Receiver to surrender the policy (DE 170 at 2-3), but this argument is unpersuasive. Rule 62(a) of the Federal Rules of Civil Procedure provides that an appeal does not automatically stay "an interlocutory or final judgment in an action for an injunction or a receivership." Moreover, the Court recently rejected the Defendants' request for a stay. (DE 317.) So there is no legal bar to the Receiver taking action to preserve the receivership estate. The Defendants then retreat to *SEC v. Kirkland*, 2007 WL 724886 (M.D. Fla. February 28, 2007), which reasoned that "[w]hile the appeal of this Court's orders is pending, disposition of the receivership assets is not appropriate because a district court does not have the power to alter the status of the case as it rests before the Court of Appeals." (Brackets and internal quotation marks omitted.) But this case is not controlling and is distinguishable. As the Receiver points out, the court in *Kirkland* "directed the receiver to continue the mortgage and upkeep payments on the real property she had requested permission to liquidate" because doing so would preserve the property's value during the appeal. (DE 177 at 2 (citing *Kirkland*, 2007 WL 724886 at *3).) But paying the life-insurance policy's premiums in the present case would, as discussed above, not preserve any value for the receivership; it instead would diminish the receivership. So the rationale of *Kirkland* does not apply. The Court therefore authorizes the Receiver to liquidate the policy and deposit the surrender value into a receivership account.

**B.     Paying NDBT for consumer chargebacks it paid**

The Corporate IAB Defendants' primary bank accounts were at NDBT. IAB charged most members through automatic debits of credit cards or bank accounts. When a customer cancelled a membership or disputed a charge, banking regulations required NDBT as the originating financial institution to honor those chargebacks and return the requested funds to the consumer's credit-card company or deposit account. NDBT would then deduct this chargeback amount from IAB's accounts. (DE 167 at 3.) Once the Preliminary Injunction went into effect, NDBT could no longer deduct the chargebacks from IAB's accounts, but it was still required by banking regulations to honor chargebacks and return the requested funds. The Receiver wants to pay NDBT for these chargebacks because doing so would, in her view, be equitable.

The Court agrees. Although the Preliminary Injunction currently prohibits third-party creditors from receiving receivership assets absent a court order, NDBT is unique: no other creditor or Defendant has incurred direct liability through reimbursing consumers. Reimbursing NDBT in turn for these payments that it has already made and that it was required to make is equitable. The Court authorizes the Receiver to reimburse NDBT for all consumer chargebacks that NDBT has paid, up to a maximum of $6,500.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Receiver's Motion (DE 167).

**DONE and ORDERED** in chambers, at Miami, Florida, on September 19, 2013.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**