UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61830-Civ-SCOLA

Federal Trade Commission,

    Plaintiff,
vs.

IAB Marketing Associates, LP, *et al.*,

    Defendants,

Avis S. Wood and Tressa K. Wood,

    Relief Defendants.
_____/

## ORDER DENYING MOTION TO DIRECT RECEIVER TO MAKE PAYMENTS TO 401(k) PLANS

Defendants James C. Woods (James) and James J. Wood (Joshua) ask the Court to order the Receiver to pay off loans they took against their 401(k) retirement accounts. (DE 194.) James and Joshua argue that if these loan balances are not paid off, then the receivership estate will have to pay unnecessary taxes and penalties. Because the Court concludes that any taxes or penalties will not be borne by the receivership estate and because paying off these loans with receivership funds would relieve James and Joshua of their debts at the expense of the receivership estate, the Court **DENIES** the Motion (DE 194).

James and Joshua each had a 401(k) retirement account with International Marketing Agency (IMA), and they each took out a loan against their account. (DE 194 at 2.) James's loan was taken out in October 2011. (DE 204-3 at 2.) Joshua's loan was taken out sometime before the Court's Temporary Restraining Order (TRO) in September 2012. (*See* DE 194; DE 204.) As of December 2012, James's loan balance was over $47,000; Joshua's, over $37,000. (DE 194 at 2; DE 194-2; DE 194-3.)

James's loan was to be repaid by withholding extra money from each paycheck and applying that money to the loan balance. (*Id.*) The Receiver has determined these loan repayments

were withheld by IMA before the TRO,[1] but not all of these repayments were applied to James's loan balance.  (DE 204 at 3-4; DE 204-3 at 2-3.)  This unapplied money, which totals around $18,000 and is not sufficient to pay off James's loan balance, was in an IAB bank account and has since been transferred by the Receiver to the comingled receivership account in accordance with the Preliminary Injunction.  (DE 204 at 4; DE 914 at 2.)  Because the loan balance corresponding to the unapplied money raises discrete issues, the Court analyzes it separately.

Turning first to Joshua's outstanding loan and the portion of James's loan not corresponding to the unapplied money, Joshua and James argue that if these loans are not paid off, then the receivership estate will suffer taxes and penalties.  (DE 194 at 2-3.)  The receivership estate should therefore pay off these loans to preserve its assets.  (*Id.*)  But the loan proceeds were received by Joshua and James before the receivership estate even existed, and Joshua and James individually are obligated to pay back the loans.  They offer no authority for the proposition that the receivership estate is liable for their individual obligations, and the Court sees no reason that this should be the case.  The Preliminary Injunction not only prohibits the Receiver from using receivership assets to pay off their individual obligations, but also provides that the receiver is not liable for paying these obligations.  (DE 72 at 23-24.)  Similarly, they offer no authority for the proposition that the receivership estate is responsible for taxes related to their individual income, investments, or loans taken against their 401(k) accounts.  And the Receiver contends that neither the receivership estate nor receivership assets are liable for paying such taxes.  So if the Court were to order the Receiver to use receivership assets to pay off their individual obligations and save them from facing penalties and taxes they otherwise might incur, the Court would in effect be diminishing the receivership estate to benefit them individually.  That is the exact opposite of what the receivership estate is for.  The receivership estate's chief function is to preserve assets so that injured consumers can be given some relief in the likely event that the FTC prevails in the present case.

Turning next to the portion of James's loan corresponding to the roughly $18,000 in unapplied money withheld from his paychecks, James argues that the Receiver should apply this money to his loan balance for an additional reason: failing to do so violates the Employee Retirement Income Security Act (ERISA).  Assuming without deciding that IMA's failure to apply the money withheld from James's paychecks to the loan balance violates ERISA, IMA would be the violating entity and thus IMA—not the receivership estate—would be liable.  The Department of

---

[1] As required by the TRO, none of the named Defendants received a paycheck once the TRO was entered in September 2012.  (DE 204 at 3 n.3.)

Labor concluded in an advisory opinion that "the *employer's* failure to remit participant loan repayments to a plan . . . would be a prohibited transaction under section 406 of ERISA." Department of Labor Advisory Opinion 2002-02A (May 17, 2002) (available at http://www.dol.gov/ebsa/regs/aos/ao2002-02a.html) (emphasis added).  It is undisputed that IMA's failure to apply these payments to the loan balance occurred before the TRO because James stopped receiving paychecks once the TRO was entered.  (DE 204 at 3 n.3.)  And it is also undisputed that the Receiver terminated the 401(k) plan as part of her decision to wind up the IAB Defendants' business because the business could not be operated profitably or legally.  If the Receiver had continued operating the 401(k) plan and refused to transfer loan repayments that were made under her watch, then perhaps she could be said to have violated ERISA.  But that is not what occurred.  If ERISA was violated, IMA was the entity that violated it because the violation occurred before the Receiver was appointed and before the receivership estate existed.  So the receivership estate is not liable for any resulting ERISA violation.

Transferring the roughly $18,000 in unapplied money from the receivership bank account to James's 401(k) account would not benefit the receivership estate.  The Court acknowledges that both the receivership bank account where the $18,000 in unapplied money currently resides and James's 401(k) account are part of the receivership estate.  But money in the receivership bank account is more liquid than money in James's 401(k) account.  So transferring this money when the receivership estate has no legal obligation to do so decreases the receivership estate's liquidity for naught.

Moreover, even if the Court is wrong in concluding that the receivership estate has not violated ERISA or that it is not liable for IMA's violations of ERISA, the liquid, unapplied money should still not be transferred to the illiquid 401(k) account.  ERISA specifically provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, *impair*, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d).  Numerous courts have held that § 1144(d) means that ERISA is subordinated to various provisions of the bankruptcy code. *Pension Benefit Guaranty Corporation v. Reorganized CF & I Fabricators of Utah, Inc.*, 179 B.R. 704, (N.D. Utah 1994) (holding that the bankruptcy code's provision authorizing the bankruptcy court to value claims regarding unfunded pension benefits trumps ERISA's provision authorizing the Pension Benefit Guaranty Corporation (PBGC) to value such claims because the bankruptcy court is statutorily required to consider principles that PBGC does not have to consider; so, applying ERISA would conflict with the bankruptcy code,

which is forbidden by § 1144(d)); *in re Pulaski Highway Express, Inc.*, 41 B.R. 305, 309-10 (Bankr. M.D. Tenn. 1984) (holding that pension payments which qualified as preferences were recoverable by the debtor in possession under 11 U.S.C. § 547 notwithstanding an ERISA provision to the contrary, 29 U.S.C. § 1103, because § 1144(d) subordinates ERISA to other federal law).  The bankruptcy court in *Pulaski* reasoned that the "§ 1144(d) could be no clearer: *nothing* in ERISA should be interpreted to impact other federal law." *Pulaski*, 41 B.R. at 309 (emphasis in original). Although the Court's Preliminary Injunction is not itself a federal law, rule, or regulation, the Court's power to issue the Injunction grows out of 15 U.S.C. § 53(b), a federal law.  15 U.S.C. § 53(b); *FTC v. Bishop*, 425 F. App'x 796, 797 (11th Cir. 2011) ("Section 13(b) of the Federal Trade Commission Act . . . allows courts to grant injunctions against defendants in an action brought by the Federal Trade Commission . . . ."). Interpreting an ERISA provision as requiring a court to enter an order contrary to the injunction that it fashioned under 15 U.S.C. § 53(b) would thus *impair* § 53(b), thereby running afoul of § 1144(d). *See* 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to . . . *impair* . . . any law of the United States . . . or any rule or regulation *issued under any such law*." (Emphasis added.)).  This is especially true when the order supposedly required by ERISA would harm the receivership estate, as it would in this case by making the estate less liquid.  That's because one of the main purposes advanced by a court's power to enjoin conduct under 15 U.S.C. § 53(b) is to "provide a remedy, specifically in the form of injunctive relief, for consumers harmed by unfair or deceptive acts or practices in or affecting commerce." *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000).  Consumers are not served by making the receivership estate less liquid.

For the reasons set forth above, the Court **DENIES** the Motion (DE 194).  The Receiver is not obligated to use receivership assets to pay off the individual obligations of Joshua and James.  They are certainly more than able to do nonenjoined work to pay their own debts themselves.

**DONE and ORDERED** in chambers, at Miami, Florida, on September 20, 2013.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**